09-05041-lmc Doc#48 Filed 03/01/10 Entered 03/01/10 05:17:28 Main Document Pg 1 of 14



**SIGNED this 26th day of February, 2010.**

_____
LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE
_____

# United States Bankruptcy Court
### Western District of Texas
### San Antonio Division

| | |
|---|---|
| IN RE | BANKR. CASE NO. |
| EMANUEL C. CONTERAS & YOLANDA C. CONTRERAS | 08-51099-C |
| *DEBTOR S* | CHAPTER 7 |
| EMANUEL C. CONTRERAS  *PLAINTIFF*  V.  DISCOVER FINANCIAL SERVICES, INC. A/K/A DFS SERVICES, LLC, & REDLINE RECOVERY SERVICES, INC.  *DEFENDANT S* | ADV. NO. 09-5041-C |

### DECISION ON PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS

CAME ON for hearing a motion by the plaintiff in this case for sanctions pursuant to Rule 37, against Redline Recovery Services, Inc., for alleged failures to comply with discovery. Both parties appeared through counsel. This decision disposes of the matter.

**Background**

This is a lawsuit claiming violations of the discharge injunction. According to the complaint, the plaintiff had a credit card account with Discover, which had a balance of about $7,000. Prior to the bankruptcy filing, it is alleged that Discover assigned the account to Redline for collection. Both Discover and Redline were listed as creditors in the bankruptcy filing. Discover allegedly reported the bankruptcy filing to Equifax. Plaintiff alleges in the complaint that Discover, via Redline, tried to collect on this account post-discharge, with demand letters and telephone calls. Plaintiff seeks both damages, and injunction, and punitive damages.

On August 6, 2009, this court entered its standard scheduling order after answers were filed (and after the court denied a motion to dismiss by Discover). The scheduling order required discovery to be completed by October 20, 2009. On October 9, 2009, plaintiff filed a motion to compel and to restrict the use of evidence against defendant Redline, claiming that Redline had failed to comply with timely discovery. Interrogatories and Requests for Production were served on July 31, 2009, with responses due August 30, 2009. Redline had failed to respond to the proffered discovery. Plaintiff alleged prejudice, and asked that Redline be barred from offering witnesses or evidence not previously fully disclosed. Redline filed a response to this pleading on October 19, 2009, and included an affidavit of counsel claiming that the failure to answer was the fault of counsel who failed to properly calendar the discovery. Counsel added that he became aware of the problem when the motion was filed, but had been unable to get the discovery responses together as yet.

Plaintiff's counsel amended its motion to compel and restrict use of evidence on October 30, 2009, noting that responses had finally been sent on the discovery that had been outstanding since late July. However, the responses were both unverified and, in plaintiff's view, incomplete. Further,

plaintiff noted that defendant had interposed objections in its responses, and that such objections should be deemed waived as having been raised untimely.

Redline filed a memorandum in opposition to the plaintiff's amended motion for sanctions. The same day, Discover filed a motion seeking sanctions against *plaintiff* for plaintiff's alleged failure to disclose any expert opinions or reports, though experts had been disclosed in plaintiff's Rule 26 disclosures. Plaintiff countered on November 11, 2009 with its own motion for sanctions against Discover.

With these pending discovery disputes, counsel for Redline sought, on November 23, 2009, an extension of the deadline for filing a pretrial order in the case (the original deadline was that day). A week later, Redline filed a form of pretrial order. While purporting to be "joint," this pretrial order was solely the submission of Redline, with no input from the plaintiff. The pretrial order disclosed two witnesses intended to be called at trial, neither of whom had been identified in Redline's answers to discovery. It also disclosed a document to be used at trial that had not been previously produced.

The docket call for this case was December 1, 2009. At that time, the court set a trial date of January 20, 2010. The court was advised that the parties were aware of the outstanding discovery issues but that they were trying to work them out (and were optimistic).

The optimism was not warranted. On January 11, 2010, plaintiff filed a motion to continue trial, which was unopposed. Plaintiff noted that the defendants had not produced discovery, as they had represented they would at the docket call in December. Indeed, the parties announced that they would have an agreed order resolving outstanding discovery disputes, but no such order was ever entered. While the parties dithered over the form of the proposed agreed order, no further discovery ensued – no more documents were produced and no revisions to interrogatory answers were

tendered.

The court, on being advised of this state of affairs, decided to set all pending discovery matters for hearing on January 20, 2009. It continued the trial to January 20, 2009, with the option of further continuing the trial to March 12, 2009 if the parties resolved the pending discovery fight. The parties promptly tendered an agreed protective order and order relating to the motion to strike with respect to the dispute with Discover. A week later (on January 20, 2010), an agreed protective order was submitted (and later signed) with regard to the disputes with Redline. In this order, the parties agreed to confidentiality with respect to certain information and documents. They further agreed that Redline would "fully and completely, in good faith, respond to Plaintiff's Interrogatories under oath and produce all documents requested in Plaintiff's Request for Production on or before fourteen (14) days from the date of entry this Order." Plaintiff further agreed to produce contents and printouts of information contained in reports from various entities from December 2008 through May 2009 regarding the plaintiff, "to the extent that these documents exist and are in the custody, care or control of Redline."

On February 10, 2010, the plaintiff filed a notice of noncompliance with the foregoing order, along with a motion for sanctions and to restrict use of evidence. This is the motion now before the court. The plaintiff says that, despite the special confidentiality provisions, Redline has still not disclosed the identify of the various persons who made the entries on the collection report that constitutes essentially the only documents produced by Redline. Nor has Redline supplemented its interrogatories to disclose the identity of persons who might have relevant information and who might be called to testify – even though Redline already filed a pretrial order that disclosed its intent to call the president of Redline as a witness. Redline also failed to produce any further documents in response to the requests for production of documents within the 14 day deadline set by the order

of January 20th. Now, Redline says that no such documents exist, but only via counsel at the hearing on the motion to compel – no responses were filed to the discovery.

At the hearing, Redline's counsel said that the failure to comply with the terms of the order was his, as he had moved offices and assigned this matter to another lawyer in his office, who failed to follow through. This explanation sounds similar to counsel's earlier remonstrations in his response to the original motion for sanctions, in which he claimed the failure to respond was due to an error in his office relating to calendaring. The explanations are especially odd in view of counsel's noting for the record at the hearing that he had represented collection companies like Redline for some 17 years.

Counsel for Redline offered to disclose the names immediately after the hearing, and to make them available for telephonic informal deposition within days. He did not address whether that schedule would work with opposing counsel's schedule, or with his co-defendant's counsel. The pretrial order for all parties is due March 2, 2010 – about two weeks away.

Counsel also explained that there were no documents responsive to the specific request for materials relating to the "scrub" – essentially a search to determine whether a given credit target is a debtor in bankruptcy. Initially, the explanation was that everything is electronic so there are no documents. Then, the explanation was that there is no report generated. Yet there is an event noted on the collection record. Thus, there must somewhere be some record (beyond the notation on the collection record) of what the scrub revealed – even if the record is only electronic.

On February 25, 2010, counsel for Redline sent a letter by facsimile to the court. The letter was dated February 18, 2010 (the day after the hearing on the sanctions motion). The letter went into great detail regarding various conversations counsel had had with persons at Redline, confirming that in fact documents responsive to the discovery of plaintiff do in fact exist, and efforts are being

made to obtain those documents. Counsel detailed his crushing workload, and problems with the way in which discovery responses were managed internally. Counsel also reiterated his interest in fixing the problem. Alternatively, he sought until the following Wednesday to file a responsive pleading.

It is unclear from the letter whether "the following Wednesday" meant February 14, 2010 (the Wednesday following the date of the letter) or March 3, 2010 (the Wednesday following the date of the letter was faxed). If the latter, it is of course too late, because the deadline for the pretrial order is next Tuesday, March 2, 2010 (unless the letter is expected to be construed as a *sub rosa* request for a further extension of the deadline for the pretrial order). The court has checked the docket. There is no further filing by Redline.

## Analysis

Rule 37(b), incorporated into these proceedings via Bankruptcy Rule 7037(b). In relevant part, Rule 37(b), titled "Failure to Comply with a Court Order," provides:

> (2) Sanctions in the District Where the Action Is Pending.
> (A) For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent… fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following: (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; … (vi) rendering a default judgment against the disobedient party…

FED.R.BANKR.P. 7037(b)(2)(A). By the plain language of the rule, a threshold requirement for a sanction under Rule 37 is that there in fact be a court order in the first instance.[1] Once that requirement is met, it is well known that a district court has broad discretion in imposing a sanction

---

[1] There is some authority for the proposition hat an actual order compelling compliance with discovery is not necessarily required. *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (saying that "an order is not always a prerequisite to the imposition of sanctions. Courts have held that *rule 37(b)* sanctions can be imposed even without an existing order to compel." (citing *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 729 F.2d 469, 472 (7th Cir. 1984)). The court in *Quarles* noted that the defendant HAD violated a docket control order that had been issued by the court. *Id.* at 1486.

pursuant to Rule 37. *Serra Chevrolet, Inc. v. GMC*, 446 F.3d 1137, 1151 (11th Cir. Ala. 2006); *Brown v. Spears (In re Spears)*, 265 B.R. 219, 222 (Bankr. W.D. Mo. 2001). The Fifth Circuit has also recognized that although Rule 37 explicitly allows for a variety of sanctions, the more severe penalties – such as striking pleadings and entering a judgment against the party that is violating discovery orders – "are 'draconian' sanction[s] that should be imposed only as a last resort." *United States v. Smith*, 2008 U.S. Dist. LEXIS 108238, at *10 (W.D. La. 2008) (citations omitted); *Smith v. Smith*, 145 F.3d 335, 344 (5th Cir. 1998). Thus, the Fifth Circuit has articulated four factors that a court must analyze before awarding such severe sanctions:

> (1) whether the violation was willful or in bad faith rather than simply due to inability to comply, (2) whether less drastic sanctions would effect the goals of Rule 37(b), (3) whether the violation prejudiced the opposing party's trial preparation, and (4) whether the client knew of or participated in the violation or simply misunderstood a court order or innocently hired a derelict attorney.

*United States v. Smith*, 2008 U.S. Dist. LEXIS 108238, at *10 (citing *U.S. For Use of M-CO Const., Inc. v. Shipco General, Inc.*, 814 F.2d 1011, 1013 (5th Cir. 1987)); *Smith v. Smith*, 145 F.3d at 344 ("'dismissal is authorized only when the failure to comply with the court's order results from willfulness or bad faith . . . . [and] where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions.'"); *United States v. 49,000 Currency*, 330 F.3d 371, 376 (5th Cir. 2003) (citations omitted) ("Also, the drastic measure is only to be employed where a lesser sanction would not substantially achieve the desired deterrent effect. The reviewing court may also consider whether the discovery violation prejudiced the opposing party's preparation for trial, and whether the client was blameless in the violation."); *see also Dobin v. Taiwan Mach. Trade Ctr. Corp. (In re Victor Int'l, Inc.)*, 278 B.R. 67, 76 (Bankr. D.N.J. 2002) (citing to Third Circuit cases reiterating these factors); *Garcia v. Berkshire Life Ins. Co. of America*, 569 F.3d 1174, 2009 U.S. App. LEXIS 12503, at *10 (10th Cir. Jun. 10, 2009) (citing five factors, one of which is "whether

the court warned the party in advance that dismissal of the action would be a likely sanction for non-compliance.") Additionally,

> [s]anctions imposed under *Rule 37(b)(2)*, 'must be specifically related to the particular 'claim' which was at issue in the order to provide discovery.' This requirement reflects the rule of *Hammond Packing Co. v. Arkansas, 212 U.S. 322, 53 L.Ed. 530, 29 S.Ct. 370 (1909)*, which held that striking the answer and entering default judgment against a corporate defendant that refused to produce any documents or to permit its officers to be deposed did not deny the defendant due process because its refusal to produce material evidence created a presumption that its asserted defense was meritless.

*Fjelstad v. American Honda Motor Co., Inc., et. al.*, 762 F.2d 1334, 1342 (9th Cir. 1985); *Serra Chevrolet, Inc. v. GMC*, 446 F.3d 1137, 1151-1152 (11th Cir. Ala. 2006) ("To comply with the Due Process Clause, a court must impose sanctions that are both 'just' and 'specifically related to the particular 'claim' which was at issue in the order to provide discovery.'" (*citing Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707, 102 S. Ct. 2099, 2107 (1982)). In other words, the sanctions imposed must be specifically tailored to the violation of whatever order was violated.

The court could not find a clear answer on whether a finding of willfulness and/or bad faith criteria *must* be made for the imposition of lesser sanctions under Rule 37. Among the so-called 'lesser' sanctions are prohibiting a party from introducing evidence or supporting or opposing claims and/or defenses. *In re LTV Steel Co.*, 307 B.R. 37, 48 (Bankr. N.D. Ohio 2004); *Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 843-844 (9th Cir. 1976). The Ninth Circuit rejected an argument that there needed to be a finding of willfulness and/or bad faith when, in excluding a party's evidence pursuant to Rule 37(b)(2), the sanction resulted in a dismissal of the party's case. *Von Brimer v.*

*Whirlpool Corp.*, 536 F.2d at 843-844.[2] Similarly, the Tenth Circuit's BAP said that "[u]nlike a court's sanction of dismissal, a court's election to forbid a party's evidence is not subject to review under a framework involving specific factors." *Rocin Liquidation Estate v. Greyhound Bus Lines (In re Rocor Int'l, Inc.)*, 2006 Bankr. LEXIS 166, at *13 (BAP 10th Cir. 2006) (*comparing Gripe v. City of Enid, Okla.*, 312 F.3d 1184, 1188 (10th Cir. 2002) (which discussed the factors outlined above that a court should consider when dismissing a case as a discovery sanction) *with Comcoa, Inc. v. NEC Telephones, Inc.*, 931 F.2d 655, 666 (10th Cir. 1991) (reviewing an imposition of lesser sanctions based upon the "'totality of the circumstances, including the specific case under review, the total management problems for courts, and access and cost problems for litigants.'")). But, at least one court has said that when a lesser sanction results in what amounts to a judgment, the higher standard applies. *See Crown Life Ins. Co. v. Craig,* 995 F.2d 1376, 1381 (7th Cir. Ill. 1993) (saying that "[w]hen a district court prevents a defendant from presenting any evidence whatsoever on a claim this normally leads to a default judgment. That is exactly what occurred here."). Thus, it appears that the standard of willfulness and/or bad faith would apply if the lesser sanction is "tantamount to a dismissal." *Higginbotham v. Volkswagenwerk Aktiengesellschaft*, 551 F. Supp. 977, 980 (M.D. Pa. 1982) (*citing U.S. v. Sumitomo Marine and Fire Ins. Co., Ltd.*, 617 F.2d 1365 (9th Cir.1980)).

Although the Fifth Circuit does not appear to require a court to consider whether a party is warned in advance that dismissal of the action is a likely sanction of non-compliance with a

---

[2] The Ninth Circuit's exact words were:

> Finally, contrary to what appellants argue, their case was not dismissed pursuant to Rule 37(b)(2)(C). Rather, evidence was excluded, as subsection (b)(2)(B) allows, which in turn led to the dismissal of their case. The trial court received foundation testimony and made findings of fact concerning these exhibits. The 'lesser penalties' for which appellants argue were in fact imposed. To argue that the trial judge imposed the 'most extreme sanction' of dismissal is to distort what actually occurred

*Von Brimer v. Whirlpool Corp.*, 536 F.2d at 844. (But, in any event, in that case the court had found that the appellants acted willfully. *Id.* at 843.)

discovery order, the court believes that, in the interest of due process, such factor merits more discussion here. As noted above, the Tenth Circuit appears to require that a court consider whether a disobedient party had notice of the severity of the possible sanctions that may be levied against it. *Garcia v. Berkshire Life Ins. Co. of America*, 569 F.3d 1174, 2009 U.S. App. LEXIS 12503, at *10. The Sixth Circuit has a similar requirement. *McDowell v. Ball (In re McDowell)*, 163 B.R. 509, 512 (Bankr. N.D. Ohio 1994) (*citing Regional Refuse Systems Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 155 (6th Cir. 1988)). However, despite the explicit requirement that a court consider whether there was such notice, the Tenth Circuit itself has said that "such an explicit warning that dismissal would be a likely sanction… is not a prerequisite to the imposition of dismissal sanctions." *Garcia*, 2009 U.S. App. LEXIS 12503, at *13 (citing to *Archibeque v. Atchison, T. & S.F. Ry.*, 70 F.3d 1172, 1175 (10th Cir. 1995)).

Additionally, the Ninth Circuit has also said that "[a] party should be given some indication by the court of how its discovery responses have been deficient." *In re Rubin*, 769 F.2d 611, 616 (9th Cir. 1985) (citing *EEOC v. Troy State University*, 693 F.2d 1353, 1357 (11th Cir. 1982)). Indeed, the Ninth Circuit noted that "it is common practice for trial courts to issue warnings or to make orders of default or dismissal conditional on a party's continued noncompliance with an outstanding order to compel. In several of our cases, such warnings were an important factor in upholding the use of severe sanctions." *Id.* In *Fjelstad v. American Honda Motor Co., Inc., et. al.*, 762 F.2d 1334, the district court had entered an order – the "July 29 order" – directing American Honda to answer all of the plaintiffs' interrogatories completely but also directed American Honda's attention more specifically to ten interrogatories. *Id.* at 1340. The district court later entered a default judgment against American Honda for its failure to comply with, *inter alia*, the July 29 order and American Honda appealed to the Ninth Circuit. Ultimately, the Ninth Circuit reversed and remanded and held

that the district court had abused its discretion in imposing such a severe sanction. *But*, the Ninth Circuit denied American Honda's argument that the July 29 order

> was too vague to support the imposition of discovery sanctions, that it was given insufficient notice of the conduct at issue before the hearing on the plaintiffs' motion for sanctions, and that the hearing did not afford it an adequate opportunity to address a number of the grounds for the imposition of default judgment on the issue of liability.

*Id.* The court held that the "July 29 order was not unconstitutionally vague." *Id.* Thus, the Ninth Circuit's decision implies that there could be a situation in which an order is so vague that it does not give a party sufficient warning that it could be subject to Rule 37 sanctions.

There is also some authority for imposing sanctions for a party's failure to comply with a second set of interrogatories. In *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, the defendant objected to the plaintiff's first set of interrogatories and requested a motion for protective order. *Id.* at 1483-1484. On April 29, 2988, the magistrate overruled the defendant's objections and denied a protective order. *Id.* at 1484. In August 1988, the magistrate entered a docket control order requiring discovery to be completed by October 1988 and the plaintiff reiterated its discovery requests. *Id.* In response to the plaintiff's second set of interrogatories, the defendant responded by "restating the prior summary objections in an even more cursory form and by producing nothing." *Id.* In March 1989, the plaintiff moved for sanctions and the magistrate found that Quarles had acted in bad faith and in a willful manner and struck his answers and entered a judgment against him. *Id.* The Fifth Circuit affirmed and said that the defendant should "not be able to avoid discovery for over a year based upon the same summary objections that the magistrate had specifically found were not sufficient – summary objections so vacuous that they had led the magistrate to order specific compliance." *Id.* at 1486.

The record in this case supports the conclusion that the only effective sanction for Redline's continuing failure to respond to discovery is to strike their answer. First of all, it is clear from the record in this case that Redline has had ample warning that it needed to comply with discovery. On the eve of a hearing to consider the plaintiff's request for entry of an order to compel discovery, a request that had, by that time, already been pending for months, Redline agreed to the entry of an agreed order that specifically directed it to respond to discovery. The court agreed to reset the docket call for this case, an accommodation granted in exchange for Redline's agreement to cooperate with discovery on a schedule that would be consistent with bringing this matter to trial. Redline can not claim surprise at this stage of the proceedings.

The court is uncertain whether Redline (or its counsel) is acting in bad faith. Certainly the court did not expect an admission of bad faith from either the client or its lawyer, any more than a court ever expects an admission of fraudulent intent in a fraud suit. However, the pattern in this case suggests bad faith. It certainly does not suggest an inability to comply. For example, Redline's lawyer explained to the court that it chose not to answer the plaintiff's request that it identify the persons who had prepared the notes regarding the collection activity by Redline, because Redline did not think those employees' privacy rights should be invaded. Counsel further stated that that was Redline's "policy." Clearly, the information was discoverable, and just as clearly there is no known privilege that would prevent the disclosure of this information. If there was a privacy consideration, Redline could certainly have sought a protective order under Rule 26, but it never did. That is not an inability to comply with discovery. That is a simple, unilateral refusal to comply with discovery, on the slimmest of legal grounds. It is but one indication that Redline has adopted a pattern of just never quite getting around to it when it comes to discovery, a tactic that permits a party to act in bad faith while being able to claim plausible deniability when they are called to ask – exactly what has

happened here.

Less drastic sanctions will not do the job here. All the relevant information needed for the plaintiff to make its case is in the hands of the defendant – and the defendant knows it. By stonewalling, the defendant can effectively deprive the plaintiff of the ability to make its case. This is not a matter of depriving a defendant of the ability to put on a defense, so merely limiting what evidence the defendant can put on does not do the job of remedying the harm.

For the reason just stated, plaintiff's ability to prepare for trial has been severely hampered. Redline says it will make every effort to make all this information available now – on the eve of the deadline for preparing a pretrial order in this case. But that makes Redline's lack of diligence into the plaintiff's emergency, when of course it is Redline, not the plaintiff, who has created the emergency. It is hardly fair for Redline's delaying to result in yet a further continuance of the trial of this matter, a trial that the plaintiff had every hope (and right to expect) would be conducted before the end of last year. Indeed, the court specifically set aside a trial date for this matter to assure that it would be tried then and not further delayed. Redline's conduct has impaired plaintiff's ability to prepare for trial on March 12, 2010.

Redline knew or should have known about these problems. This is not Redline's first rodeo, as it were. They have been sued before in federal court, and this attorney has represented Redline many times before. Counsel is not incompetent or derelict – though his failure to follow through in this case suggests some dereliction. Still and all, Redline chose the lawyer. If anyone should suffer the consequences of that choice, it should the client, not the opposing party.

For the reasons stated, the court grants the plaintiff's motion for sanctions under Rule 37, and by this order, strikes the answer of the defendant Redline. Plaintiff is directed to furnish the court a form of order consistent with this decision.

# # #